UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
MIGUEL HERREROS TORRES and JUAN DANIEL ORTIZ REYES,

                              Plaintiffs,

        -against-

894 DEKLAB PIZZA CORP. and ROBERTO "DOE,"

                              Defendants.
-------------------------------------------------------------------:
                                x

**REPORT &
RECOMMENDATION**
19-CV-5750 (AMD) (SMG)

GOLD, STEVEN M., U.S. Magistrate Judge:

### INTRODUCTION

Plaintiffs Miguel Herreros Torres and Juan Daniel Ortiz Reyes bring this action pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") against defendants 894 Dekalb Pizza Corporation ("Dekalb Pizza") and Roberto "Doe," seeking unpaid minimum and overtime wages, spread-of-hours pay, compensation for failure to provide proper wage notices and wage statements, statutory damages, liquidated damages, pre- and post-judgment interest, and attorney's fees and costs.  Compl., Dkt. 1.

Upon plaintiffs' application and in light of defendants' failure to appear in or otherwise defend this action, the Clerk of the Court noted the default of defendant Dekalb Pizza. Certificate of Default, Dkt. 13.  Plaintiff then moved for default judgment against defendants. Not. of Mot. for Default J., Dkt. 16.  The Honorable Ann M. Donnelly referred plaintiffs' motion to me for report and recommendation.  Order dated October 2, 2020.[1]

---

[1] Although plaintiffs move for entry of default judgments against both defendants, the Court's docket indicates that they have never obtained a certificate of default with respect to defendant Roberto Doe.  Nor does this Court believe it would be proper to enter a judgment against a defendant identified only by a first name, as it is unclear how such a judgment might be enforced.

## FACTUAL BACKGROUND

Plaintiffs allege that Dekalb Pizza is a corporation which operates "Due Fratelli Pizza," a restaurant with a principal place of business at 894 DeKalb Avenue, Brooklyn, NY 11221.[2] Compl. ¶ 6; Mem. of Law in Supp. of Pls.' Mot. for Default J. ("Mem. of Law") at 2, Dkt. 16-1. Plaintiffs allege that, at all relevant times, defendant Roberto "Doe" was an owner or part owner and principal of Dekalb Pizza.  Compl.  ¶ 12.

Plaintiff Miguel Herreros Torres ("Torres") was employed by defendants as a cook from approximately October 25, 2017 until September 13, 2019.  *Id*. ¶¶ 19-20.  His regular work schedule was six days per week, working approximately 11.5 hours per day on Wednesdays, Saturday, and Sundays, and approximately 7.5 hours per day on Tuesdays, Thursdays, and Fridays, for a totally of 57 hours per week.  *Id.* ¶¶ 23-26.  For this work, Mr. Torres was paid $680 in cash per week throughout his employment.  *Id.* ¶¶ 36-37.

Plaintiff Juan Daniel Ortiz Reyes ("Reyes") was employed by defendants as a cook from approximately October 5, 2017 through July 2018.  *Id.* ¶¶ 27-28.  His regular work schedule was six days per week, working approximately 11.5 hours per day on Tuesdays, Wednesdays, Thursdays, and Fridays, and approximately 6.5 hours per day on Saturdays and Sundays, for a totally of 54 hours per week.  *Id.* ¶¶ 31-34.  Mr. Reyes again worked for defendants from approximately April 20, 2019 through September 13, 2019, working approximately 59 hours per week during this period of employment.  *Id.* ¶¶ 27, 34.  For his work, Mr. Reyes was paid $700 in cash per week for the first period of his employment, and $900 in cash per week during his employment in 2019.  *Id.* ¶¶ 36, 38-39.

---

[2] Although it apparently takes its name from DeKalb Avenue, the corporation is identified in plaintiffs' submissions with a lowercase letter k.

Plaintiffs allege that defendants did not maintain a method for tracking the time that employees worked and did not maintain accurate and sufficient time records. *Id.* ¶ 35, 52. Plaintiffs further claim that defendants failed to pay them overtime pay for hours worked in excess of 40 each week, did not pay spread-of-hours compensation for each day in which they worked more than 10 hours, and did not provide plaintiffs with written wage notice or wage statements at any point during their employment.[3] *Id.* ¶¶ 43-47.

## DISCUSSION

### I.     Liability

Once the Clerk enters a defendant's default, the defendant is deemed to have admitted the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks and citation omitted); *see Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

### A.   FLSA

"The FLSA governs minimum wages, maximum hours, and other policies and practices affecting employees and employers." *Thompson v. Hyun Suk Park*, 2019 WL 1299194, at *2 (E.D.N.Y. Mar. 5, 2019), *report and recommendation adopted*, 2019 WL 1298563 (E.D.N.Y. Mar. 20, 2019); *see Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 224 (2014). To demonstrate

---

[3] In their Complaint, plaintiffs also allege that they were "occasionally [paid] below the statutory minimum wages in effect at relevant times." Compl. ¶ 40. Plaintiffs' subsequent filings, including their tables of damage calculations, as well as the Court's own calculations, do not show that plaintiffs were paid below the minimum wage, as discussed *infra* at 10.

entitlement to wage and overtime protections under the FLSA, a plaintiff must show that (1) an employer-employee relationship exists and (2) the employment falls under the FLSA's individual or enterprise coverage provisions.  *See Baizan Guerrero v. 79th St. Gourmet & Deli Inc.*, 2019 WL 4889591, at *4 (E.D.N.Y. Sept. 10, 2019), *report and recommendation adopted*, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019); *see also* 29 U.S.C. § 206(a)(1) (providing for minimum wages for qualifying employees); *id.* § 207(a)(1) (providing for overtime wages for qualifying employees).

>    i.   Whether Defendants were Plaintiffs' Employers
>         under the FLSA

The FLSA broadly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and a "person" as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons," *id.* § 203(a).  The FLSA further defines the term "employee" as "any individual employed by an employer."  *Id.* § 203(e)(1).  "Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).  To determine whether a party qualifies as an "employer" under the FLSA, "the overarching concern" that courts consider is "whether the alleged employer possessed the power to control the workers in question, . . . with an eye to the 'economic reality' presented by the facts of each case."  *Id.* (quoting *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961)) (internal citation omitted); *see Baizan Guerrero*, 2019 WL 4889591, at *4.  When examining the "economic reality" of a particular situation, the following factors are relevant: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained

employment records." *Herman*, 172 F.3d at 139 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).  No one factor is dispositive.  *See id.*

Here, plaintiffs allege that defendants owned and operated a restaurant, located at 894 DeKalb Avenue, Brooklyn, New York, 11221, at which plaintiffs were employed as cooks. Compl. ¶¶ 6, 19-20, 27-28; Mem. of Law at 2.  Plaintiffs allege that "the corporate defendant is a covered enterprise under the FLSA" that is engaged in interstate commerce and has gross revenues in excess of $500,000.  Mem. of Law at 2; Compl. ¶¶ 7-8.  While plaintiffs do not allege that the defendants maintained employment records, they do allege that "[d]efendants failed to maintain accurate and sufficient records or provide accurate records to employees." Compl. ¶ 52.  As the other factors are clearly satisfied by plaintiffs' allegations, I find that defendants meet the definition of an employer under the FLSA and respectfully recommend that each of them be held jointly and severally liable for any judgment entered in this case.  *See* 29 C.F.R. § 791.2; *see also Sarmiento Perez v. Comhar Grp. LLC*, 2020 WL 1364908, at *4 (E.D.N.Y. Mar. 6, 2020), *report and recommendation adopted*, 2020 WL 1332200 (E.D.N.Y. Mar. 23, 2020); *Rodriguez v. Solares Corp.*, 2018 WL 7252949, at *4 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019).  However, as noted above, I do not recommend entry of judgment against the individual defendant, who is identified only as Roberto Doe.

### ii.   Whether Plaintiffs' Employment was Covered by the FLSA

The FLSA's minimum wage and overtime provisions apply only to those "employees (1) who are *personally* 'engaged in [interstate] commerce or in the production of goods for [interstate] commerce' (so-called 'individual coverage'), or (2) who are 'employed in an *enterprise* engaged in [interstate] commerce or in the production of goods for [interstate]

commerce' (so-called 'enterprise coverage')."  *Shim v. Millennium Grp.*, 2009 WL 211367, at *2

(E.D.N.Y. Jan. 28, 2009) (quoting 29 U.S.C. §§ 206(a), 207(a)); *see Jacobs v. N.Y. Foundling

Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009) (per curiam).  As relevant here, to properly plead

enterprise coverage, a plaintiff must demonstrate that his employer has "annual gross volume of

sales made or business done [of] not less than $500,000" and has two or more employees

regularly and recurrently engaged in commerce or the production of commerce, including the

"handling, selling, or otherwise working on goods or materials that have been moved in or

produced for commerce[.]"  29 U.S.C. § 203(s)(1)(A)(i)–(ii); *see* 29 C.F.R. § 779.238.

      Here, plaintiff alleges that at all relevant times, defendant Dekalb Pizza "constituted an

'enterprise' as defined in the FLSA" and was "an employer engaged in interstate commerce

and/or the production of goods for commerce within the meaning of the FLSA," "ha[d] gross

revenues exceeding $500,000," and "used goods and materials produced in interstate commerce,

and ha[d] employed individuals who handled such goods and materials."  Compl. ¶¶ 7-10.

      Although courts have questioned whether complaints that merely repeat the language of a

statute without alleging supporting facts properly plead a cause of action, *see, e.g., Gunawan v.

Sake Sushi Rest.*, 897 F. Supp. 2d 76, 85 (E.D.N.Y. 2012), other courts have held allegations

similar to those made here with respect to enterprise coverage to be sufficient when it was

otherwise "reasonable to infer that the myriad goods necessary to operate" the enterprise and that

generates "over $500,000.00 in annual sales d[id] not exclusively come from New York State."

*Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015); *see Huerta

v. Victoria Bakery*, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012).

      Accordingly, because it is logical to infer that at least some of a restaurant's "products

and produce would have originated outside of New York," I find that plaintiff has "provided an

adequate factual basis for inferring that [d]efendants had 'employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person' and, therefore were an enterprise engaged in [interstate] commerce under the FLSA." *Cardoza v. Mango King Farmers Mkt. Corp.*, 2015 WL 5561033, at *4 (E.D.N.Y. Sept. 1, 2015), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015); *Guerrero*, 2019 WL 4889591, at *5 ("it is reasonable to infer that the operation of a New York deli with over $500,000.00 in annual sales 'requires a wide variety of materials. . . for example, foodstuffs, kitchen utensils, cooking vessels, cleaning supplies,' and it is 'reasonable to infer that some of these materials moved or were produced in interstate commerce'") (quoting *Fermin*, 93 F. Supp. 3d at 33).

　　　　　*B. NYLL*

　　　　Similar to the FLSA, the NYLL covers certain activities or practices affecting employers and employees.  The NYLL defines an employer as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business[,] or service."  N.Y. Lab. Law § 190(3).  An employee is defined as "any person employed for hire by an employer in any employment."  *Id.* § 190(2).  Because these definitions are similar to the FLSA's definitions, "courts use the same tests to determine joint employment under both the NYLL and the FLSA."  *Khan v. Nyrene, Inc.*, 2020 WL 1931282, at *5 (E.D.N.Y. Mar. 11, 2020) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2020 WL 1929066 (E.D.N.Y. Apr. 21, 2020).  Therefore, for the same reasons discussed above with respect to concluding that plaintiff is jointly employed by defendants under the FLSA, I respectfully recommend that defendants be held jointly and severally liable for any judgment

entered in this case under the NYLL.  *See id.; see also Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003).

**II.     Relief**

A party's default "is not considered an admission of damages."  *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158 (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). Accordingly, "[i]f the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a 'reasonable certainty.'"  *Gunawan*, 897 F. Supp. 2d at 83 (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence.  *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).

**A.   Unpaid Wages Due**

"Under both the FLSA and NYLL, an employer is required to maintain records of the wages, hours, and persons employed by him [or her]."  *Lu Nan Fan v. Jenny & Richard's Inc.*, 2019 WL 1549033, at *9 (E.D.N.Y. Feb. 22, 2019) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019). Where, as here, defaulting defendants fail to produce the requisite records, a plaintiff's sworn declaration "containing information as to hours worked and rates of pay based on estimation and recollection, even if the information provided is general and not detailed, is considered a sufficient basis for the determination of damages in this context."  *Nikolaeva v. Home Attendant Servs. of Hyde Park*, 2017 WL 3491964, at *3 (E.D.N.Y. July 19, 2017) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2017 WL 3493136 (E.D.N.Y. Aug. 14, 2017); *see also Herrera v. Tri-State Kitchen and Bath, Inc.*, 2015 WL 1529653, at *8

8

(E.D.N.Y. Mar. 31, 2015). "Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate." *Lu Nan Fan*, 2019 WL 1549033, at *9.

Plaintiffs have submitted declarations describing their dates of employment along with average hours worked and wages per week. Decl. of Juan Daniel Ortiz Reyes ("Reyes Decl.") ¶¶ 5-7, 9-10, Dkt. 18; Decl. of Miguel Herreros Torres ("Torres Decl.") ¶¶ 5-6, 9, Dkt. 18-1. Plaintiffs' attorney, Michael Samuel, Esq., has also submitted a memorandum of law in conjunction with the motion, including tables of damage calculations. *See* Mem. of Law; Reyes Table of Damages, Dkt. 16-5; Torres Table of Damages, Dkt. 16-6. In light of defendants' default, plaintiffs' evidence on damages stands uncontroverted, and therefore plaintiff has provided a sufficient basis upon which to determine damages.

### i.    Regular Wage

To calculate a plaintiff's minimum wage and overtime compensation, the Court must first determine the plaintiff's regular hourly wage rate. *See*, *e.g.*, *Xin Long Lin v. New Fresca Tortillas, Inc.*, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), *report and recommendation adopted*, 2019 WL 3714600 (E.D.N.Y. May 28, 2019); *Santillan v. Henao*, 822 F. Supp. 2d 284, 295 (E.D.N.Y. 2011). Under the FLSA, the regular rate is defined "as the hourly rate actually paid the employee for the normal, non-overtime workweek for which he [or she] is employed" and is "drawn from what happens under the employment contract." 29 C.F.R. § 778.108.

New York Codes, Rules and Regulations ("NYCRR") § 146-3.5 states that the regular rate of pay for workers in the hospitality industry "is calculated by dividing the employee's weekly salary by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." NYCRR § 146-3.5. Section 146-3.1 defines workers in the hospitality industry as including any restaurant or hotel employee. NYCRR § 146-3.1. *See Martinez v.*

*Alimentos Saludables Corp.*, 2017 WL 5033650, at \*14 (E.D.N.Y. Sept. 22, 2017) ("the 'regular rate of pay' for employees in the hospitality industry. . . is calculated by 'dividing the employee's total weekly earnings. . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week.")

Here, both Mr. Reyes and Mr. Torres were employed in the hospitality industry as cooks, and both worked more than 40 hours per week for the entirety of their employment with defendants.  Reyes Decl. ¶ 6; Torres Decl. ¶ 6; Reyes Table of Damages; Torres Table of Damages.  As such, the Court divides the weekly pay of each plaintiff by 40 hours to determine their regular rate of pay.  Mr. Reyes was paid a weekly rate of $700.00 between October 5, 2017 and July 1, 2018 and his regular rate of pay for that time period was therefore $17.50 per hour ($700.00/40 hours).  *See* Reyes Table of Damages.  Between April 20, 2019 and September 13, 2019, Mr. Reyes was paid a weekly rate of $900.00, and therefore his regular rate of pay for that time period was $22.50 per hour ($900.00/40 hours).  *Id.*  Mr. Torres was paid a weekly rate of $680.00 for the entirety of his employment with defendants, which began on October 25, 2017 and ended on September 13, 2019.  *See* Torres Table of Damages.  Therefore, his regular rate of pay was $17.00 per hour ($680.00/40 hours).  *Id.*

ii.    Unpaid Minimum Wages

Both the FLSA and the NYLL mandate that employees be paid at least a minimum hourly rate for every hour that they work.  *See* 29 U.S.C. § 206(a); N.Y. Lab. Law § 652(1).  "The federal minimum wage does not preempt the state minimum wage, and a plaintiff may recover under whatever statute provides the highest measure of damages."  *Wicaksono v. XYZ 48 Corp.*, 2011 WL 2022644, at \*3 (S.D.N.Y. May 2, 2011) (internal citation omitted), *report and recommendation adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011); *see also* 29 U.S.C. §

10

218(a) (providing that "[n]o provision of [the FLSA] shall excuse noncompliance with any Federal or State law . . . establishing a minimum wage higher than the minimum wage established under [the FLSA]").

At all times relevant here, the FLSA required defendants to pay plaintiffs a minimum hourly wage of $7.25.  *See* 29 U.S.C. § 206(a)(1)(C).  The applicable minimum wage under the NYLL for a New York City employer with ten or less employees varied over the relevant time period, from $10.50 per hour on or after December 31, 2016, to $12.00 per hour on or after December 31, 2017, to $13.50 per hour on or after December 31, 2018.  *See* N.Y. Lab. Law § 652(1)(a)(ii).

Here, plaintiffs initially made claims in their complaint that they were "occasionally [paid] below the statutory minimum wages in effect at relevant times."  Compl. ¶ 40.  Plaintiffs repeat this claim in their memorandum of law and declarations.  Mem. of Law at 2-3; Reyes Decl. ¶ 11; Torres Decl. ¶ 10.  As noted above, plaintiffs were paid hourly rates ranging from $17.00 to $22.50 at all relevant times, amounts which are well above the statutory minimum wage under both the FLSA and the NYLL, and plaintiffs' tables of damage calculations do not make claims for unpaid minimum wages.  Reyes Table of Damages; Torres Table of Damages. The Court therefore finds that plaintiffs are owed no unpaid minimum wages.

### iii.   Unpaid Overtime Compensation

Overtime compensation under the FLSA is 1.5 times the regular rate of pay for each hour worked in excess of forty hours per week.  *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a). The NYLL incorporates and restates the FLSA's requirements, and the analysis of overtime claims under the NYLL is therefore generally the same as under the FLSA.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *see also Nakahata v. New York-Presbyterian Healthcare*

11

*Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (noting that the NYLL adopts the FLSA's definition of overtime into the NYLL). "An employee's appropriate overtime rate is calculated by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half." *Baizan Guerrero*, 2019 WL 4889591, at *8 (internal quotation marks and citation omitted).

Here, plaintiffs have sufficiently alleged that defendants did not pay them overtime compensation. For the period between October 5, 2017 and July 1, 2018, Mr. Reyes should have been paid an overtime rate of $26.25 ($17.50 x 1.5) for each hour that he worked in excess of 40 per week. As Mr. Reyes was not paid any overtime during this period, and as he worked for a total of 54 hours per week during this time period, Mr. Reyes is owed overtime compensation for 14 hours (54 - 40) per week. Thus, Mr. Reyes is entitled to $367.50 ($26.25 × 14 hours) in overtime compensation per week for a total of 38 weeks and two days between October 5, 2017 and July 1, 2018, for a total of $14,070.00 in overtime owed during this period.

For the period between April 20, 2019 and September 13, 2019, Mr. Reyes should have been paid an overtime rate of $33.75 ($22.50 x 1.5) for each hour that he worked in excess of 40 per week. As Mr. Reyes was not paid any overtime during this period, and as he worked for a total of 59 hours per week during this time period, Mr. Reyes is owed overtime compensation for 19 hours (59 - 40) per week. Thus, Mr. Reyes is entitled to $641.25 ($33.75 × 19 hours) in overtime compensation per week for a total of 20 weeks and 6 days between April 20, 2019 and September 13, 2019, for a total of $13,374.64 in overtime owed during this period.

In sum, as to Mr. Reyes, I respectfully recommend that he be awarded a total of $27,444.64 in unpaid overtime wages.

As to Mr. Torres, for the period between October 25, 2017 and September 13, 2019, Mr. Torres should have been paid an overtime rate of $25.50 ($17.00 x 1.5) for each hour that he worked in excess of 40 per week. As Mr. Torres was not paid any overtime during his employment with defendants, and as he worked for a total of 57 hours per week during his employment, Mr. Torres is owed overtime compensation for 17 hours (57 - 40) per week. Thus, Mr. Torres is entitled to $433.50 ($22.50 × 17 hours) in overtime compensation per week for a total of 98 weeks between October 25, 2017 and September 13, 2019, for a total of $42,483.00 in overtime owed during this period. In sum, as to Mr. Torres, I respectfully recommend that he be awarded a total of $42,483.00 in unpaid overtime wages.

### iv.   Spread-of-Hours Compensation

In New York, employees are entitled to receive "spread-of-hours" pay, which is "one hour's pay at the basic minimum hourly wage rate" for any workday that lasts longer than 10 hours. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4(a). Typically, "[o]nly employees making the minimum wage rate, or less, are eligible for spread-of-hours compensation." *Hernandez v. Delta Deli Mkt. Inc.*, 2019 WL 643735, at *7 (E.D.N.Y. Feb. 12, 2019). But under Section 146-1.6(d) of New York Codes, Rules and Regulations "'all employees in restaurant and all-year hotels' are entitled to spread-of-hours pay regardless of their regular pay rate." *Baizan Guerrero*, 2019 WL 4889591, at *8 (citing *Elisama v. Ghzali Gourmet Deli, Inc.*, 2016 WL 11523365, at *11, (S.D.N.Y. Apr. 29, 2016); N.Y.C.R.R. § 146–1.6(d).

Here, as cooks working in a restaurant, plaintiffs are entitled to "spread-of-hours" pay despite having been paid more than the minimum wage. Mr. Reyes worked for defendants from approximately October 5, 2017 through July 2018, and again from approximately April 20, 2019 through September 13, 2019. Compl. ¶ 27. Mr. Reyes claims he is owed spread-of-hours pay

13

only for the second period of his employment, when he worked approximately 59 hours per week and 11.5 hours per day on Tuesdays, Wednesdays, Thursdays, and Fridays. *Id.* ¶¶ 27, 32-34; Reyes Table of Damages.  As such, Mr. Reyes is entitled to spread-of-hours compensation for 4 days per work week during this time.  As the prevailing hourly minimum wage during this time period was $13.50, I respectfully recommend that Mr. Reyes be awarded a total of $1,126.29 in spread-of-hours compensation (20 and 6/7 weeks x 4 days x $13.50).

As to Mr. Torres, he alleges that he worked approximately 11.5 hours per day 3 days per week, Wednesdays, Saturday, and Sundays, throughout his employment.  Compl. ¶ 24; Torres Table of Damages.  This entitles Mr. Torres to spread-of-hours pay for 3 days per work week.

For the period from October 25, 2017 to December 30, 2017, Mr. Torres worked 11.5 hours per day for 3 days a week for a total of 9 and 3/7 weeks, which entitles him to one hour of extra pay per day at the then prevailing hourly minimum wage of $10.50, for a total of $297.00 (9 and 3/7 weeks x 3 days x $10.50); for the period from December 31, 2017 to December 30, 2018, Mr. Torres worked 11.5 hours per day for 3 days a week for a total of 52 weeks, which entitles him to one hour of extra pay per day at the then prevailing hourly minimum wage of $12.00, for a total of $1,872.00 (52 weeks x 3 days x $12.00); for the period from December 31, 2018 to September 13, 2019, Mr. Torres worked 11.5 hours per day for 3 days a week for a total of 36 and 4/7 weeks, which entitles him to one hour of extra pay per day at the then prevailing hourly minimum wage of $13.50, for a total of $1,481.14 (36 and 4/7 weeks x 3 days x $13.50).

In sum, as to Mr. Torres, I respectfully recommend that he be awarded a total of $3,650.14 in spread-of-hours compensation.

## B. *Statutory Damages under the Wage Theft Prevention Act*

Section 195(1)(a) of the NYLL requires employers to provide employees at the time of hiring with a wage notice containing, among other things, the rate of pay, the basis thereof, and the pay schedule.  After February 27, 2015, violations of section 195(1) carry damages of $50 per workday, up to a maximum of $5,000.  N.Y. Lab. Law § 198(1-b).  Furthermore, section 195(3) of the NYLL requires employers to furnish employees with "a statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details."  *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (internal quotation marks and citation omitted).  After February 27, 2015, violations of section 195(3) carry damages of $250 per workday, up to a maximum of $5,000.  N.Y. Lab. Law § 198(1-d).[4]

Here, both plaintiffs allege that they never received a wage notice or wage statements from defendants at any point throughout the course of their employment.  Compl. ¶¶ 46-47; Mem. of Law at 8.  Because plaintiffs worked without a wage notice for more than 100 days and without a wage statement for more than 20 days, and these violations occurred after February 27, 2015, I respectfully recommend that plaintiffs each be awarded the maximum statutory damages of $5,000 under N.Y. Lab. Law § 195(1) and $5,000 under N.Y. Lab. Law § 195(3), for a total of $10,000 to Mr. Reyes and $10,000 to Mr. Torres.  *See, e.g., Sarmiento Perez*, 2020 WL 1364908, at *6; *Jianmin Jin v. Shanghai Original, Inc.*, 2019 WL 3244187, at *5 (E.D.N.Y. July 19, 2019).

---

[4]  Prior to February 27, 2015, employees were entitled to recover statutory damages for wage notice violations of $50 per work week, not to exceed $2,500, and for wage statement violations of $100 per work week, not to exceed $2,500.  *See Cazarez v. Atl. Farm & Food Inc.*, 2017 WL 3701687, at *6 (E.D.N.Y. May 31, 2017), *report and recommendation adopted*, 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017).

### C. *Liquidated Damages*

The FLSA and the NYLL both allow for liquidated damages awards equaling 100% of

the wages due.  29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  Under the FLSA, courts may, in

their discretion, decline to award liquidated damages where employers "show[] to the

satisfaction of the court" that they acted in good faith and reasonably believed they did not

violate the FLSA.  29 U.S.C. § 260.  Similarly, the NYLL permits a court to decline to award

liquidated damages if "the employer proves a good faith basis to believe that its underpayment of

wages was in compliance with the law."  N.Y. Lab. Law § 663(1).

Because "there are no meaningful differences" between the FLSA and NYLL liquidated

damages provisions, the Second Circuit has interpreted the two statutes "as not allowing

duplicative liquidated damages for the same course of conduct."  *Rana v. Islam*, 887 F.3d 118,

123 (2d Cir. 2018).  "In light of the principle that the law providing the greatest recovery will

govern, [p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA."

*Jian Hua Li v. Chang Lung Grp. Inc.*, 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7, 2020)

(internal quotation marks and citation omitted).  However, "[l]iquidated damages are not

available for violations of the NYLL wage notice and statement provisions."  *Id.*; *see* N.Y. Lab.

Law § 198(1-a), (1-d).

Here, defendants, having defaulted, have failed to make a showing of good faith.  *See,*

*e.g.*, *Lu Nan Fan*, 2019 WL 1549033, at *11.  Therefore, plaintiffs are entitled to liquidated

damages equal to 100% of their damages for overtime wages and spread-of-hours premiums

under the NYLL.  Accordingly, I respectfully recommend that Mr. Reyes be awarded $28,570.93

in liquidated damages, representing $27,444.64 in overtime wages and $1,126.29 in spread-of-

hours premiums.  As to Mr. Torres, I respectfully recommend that he be awarded $46,133.14 in

liquidated damages, representing $42,483.00 in overtime wages and $3,650.14 in spread-of-hours premiums.

### D. Prejudgment Interest

The NYLL provides for prejudgment interest at an interest rate of 9% per annum in addition to liquidated damages.  *See* N.Y. Lab. Law § 198(1-a); *Espinoza v. Indus. Glass & Mirror Inc.*, 2016 WL 7650592, at *6 (E.D.N.Y. Nov. 30, 2016), *report and recommendation adopted*, 2017 WL 65828 (E.D.N.Y. Jan. 5, 2017).  Courts have discretion in determining a reasonable date from which to award prejudgment interest, such as the "the earliest ascertainable date the cause of action existed," or a reasonable intermediate date if damages were incurred at various times.  *Santillan*, 822 F. Supp. 2d at 298 (quoting N.Y. C.P.L.R. § 5001(b)).  Because plaintiffs were denied adequate wages throughout their employment, the midway point between when each plaintiff began and ceased working for defendants is a reasonable intermediate date for purposes of calculating prejudgment interest.

Here, Mr. Reyes worked for defendants from approximately October 5, 2017 to July 1, 2018, and again from approximately April 20, 2019 to September 13, 2019.  Accordingly, the intermediate date in his employment is approximately September 24, 2018.  As such, I respectfully recommend that plaintiff Reyes be awarded prejudgment interest on $28,570.93, which amounts to $7.04 per diem, from September 24, 2018, through entry of judgment.

Mr. Torres worked for defendants from approximately October 25, 2017 to September 13, 2019.  Accordingly, the intermediate date in his employment is approximately October 4, 2018.  As such, I respectfully recommend that plaintiff Torres be awarded prejudgment interest on $46,133.14, which amounts to $11.38 per diem, from September 2, 2019, through entry of judgment.

### E.  *Post-judgment Interest*

Under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court. . . calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment."  An award of post-judgment interest at the statutorily prescribed rate is mandatory.  *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008); *see also Fermin*, 93 F. Supp. 3d at 53.  Accordingly, although plaintiffs did not request post-judgment interest in this motion for default judgment, I respectfully recommend that plaintiffs be awarded post-judgment interest, to be calculated from the date the Clerk of Court enters judgment until the date the judgment is paid.

### F.  *Attorney's Fees*

Plaintiffs are entitled to recover reasonable attorney's fees and costs under both the FLSA and NYLL.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  "The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged."  *Fermin*, 93 F. Supp. 3d at 51; *see generally N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  Well-established Second Circuit doctrine requires that a fee application be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done."  *Carey*, 711 F.2d at 1148.  "Failure to do so results in denial of the motion for fees."  *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992); *see also Scott v. City of New York*, 626 F.3d 130, 133–34 (2d Cir. 2010).  District courts have broad discretion in determining the reasonableness of an attorney's requested fees.  *See*

*Chocolatl v. Rendezvous Cafe, Inc.*, 2019 WL 5694104, at *14 (E.D.N.Y. Aug. 16, 2019), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020).

Courts awarding attorney's fees calculate a "presumptively reasonable fee" by taking the product of the hours reasonably expended and a reasonable hourly rate. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008).[5] In addition, courts consider case-specific variables such as

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

i.    Reasonable Hourly Rates

A reasonable hourly rate reflects "what a reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 184. This rate should be based on rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community." *Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc.*, 2019 WL 3937126, at *14 (E.D.N.Y. July 3, 2019) (citing *Farbotko v. Clinton Cty. of N.Y.*, 433 F.3d 204, 209 (2d Cir.

---

[5] The "presumptively reasonable fee" is historically known as the "lodestar." *Arbor Hill*, 522 F.3d at 183.

2005)).  "The 'community' is generally considered the district where the district court sits."  *Id.* (citing *Lochren v. Cty. of Suffolk*, 344 F. App'x 706, 708 (2d Cir. 2009)).

In this case, "the reasonable rate should reflect the rates awarded in FLSA cases in this district, not cases involving other fee-shifting statutes."  *Encalada v. Baybridge Enters. Ltd.*, 2014 WL 4374495, at *1 (E.D.N.Y. Sept. 2, 2014), *aff'd*, 612 F. App'x 54 (2d Cir. 2015). Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases.  *See, e.g.*, *Rodriguez v. Yayo Rest. Corp.*, 2019 WL 4482032, at *8 (E.D.N.Y. Aug. 23, 2019), *report and recommendation adopted*, 2019 WL 4468054 (E.D.N.Y. Sept. 18, 2019); *Elvey*, 2019 WL 3937126, at *15; *Hernandez*, 2019 WL 643735, at *10; *Cohetero v. Stone & Tile, Inc.,* 2018 WL 565717, at *4 (E.D.N.Y. Jan. 25, 2018).

Here, Michael Samuel, Esq., a founding partner at the firm Samuel & Stein, requests an hourly rate of $425.00.  *See* Declaration of Michael Samuel, Esq. in Supp. of Pl.'s Mot. for Default J. ("Samuel Decl."), Dkt. 16-2.  As set forth in his declaration and billing records, Mr. Samuel was the only attorney at Samuel & Stein who worked on this matter.  *Id.* ¶ 19-21; Billing Records, Dkt. 16-4.  Mr. Samuel has been admitted to practice law since 1993 and has focused his practice "almost exclusively on wage-and-hour cases, serving as counsel of record in more than 350 such cases. . . ."  Samuel Decl. ¶ 19.  Given Mr. Samuel's experience in wage and hour cases, and given that his requested rate here is within the range typically approved in the Eastern District, I respectfully recommend compensating him at a rate of $425.00 per hour.

ii.    Reasonable Numbers of Hours

The next step in awarding attorney's fees is determining the reasonableness of the number of hours expended by counsel.  In reviewing a fee application, the court should exclude "excessive, redundant, or otherwise unnecessary" hours.  *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  The court should examine each entry "with a view to the value of the work product of the specific expenditures to the client's case."  *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997).  If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly."  *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012).  Furthermore, block-billing and vague descriptions make it difficult to determine the reasonableness of the time spent on particular tasks and warrant a reduction in attorney's fees.  *See Linde v. Arab Bank, PLC*, 293 F.R.D. 138, 142–43 (E.D.N.Y. 2013).  A percentage reduction is "a practical means of trimming fat from a fee application" and is a permissible way of reducing a fee award.  *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotation marks and citations omitted).

Here, the contemporaneous billing records submitted to the Court show that Mr. Samuel billed 8.2 hours on this matter.  Billing Records.  After reviewing these records, I find the hours expended to be reasonable even despite the routine nature of plaintiffs' claims.  Accordingly, I recommend that Mr. Samuel be awarded a total of $3,485.00 in attorneys' fees.

iii.    Costs

A party awarded attorney's fees is also entitled to compensation for "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *LeBlanc-*

*Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotation marks and citation omitted).  Plaintiff seeks to recover costs of $400 for the filing fee in this matter.  *See* Samuel Decl. ¶ 22.  I find this cost to be reasonable and respectfully recommend that plaintiff be awarded $400.00 in costs.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the Court: (1) grant plaintiffs' motion for a default judgment against defendants, jointly and severally, but enter judgment only against defendant 894 Dekalb Pizza Corporation; (2) award Mr. Reyes damages totaling $67,141.86, consisting of $27,444.64 in unpaid overtime compensation, $1,126.29 in spread-of-hours compensation, $10,000 in statutory damages, and $28,570.93 in liquidated damages; (3) award Mr. Reyes pre-judgment interest on $28,570.93 at the rate of 9% per year from September 24, 2018, until the date final judgment is entered; (4) award Mr. Torres damages totaling $102,266.28, consisting of $42,483.00 in unpaid overtime compensation, $3,650.14 in spread-of-hours compensation $10,000 in statutory damages, and $46,133.14 in liquidated damages; (5) award Mr. Torres pre-judgment interest on $46,133.14 at the rate of 9% per year from October 4, 2018, until the date final judgment is entered; (6) award plaintiffs Reyes and Torres post-judgment interest at the statutorily prescribed rate from the date judgment is entered until the judgment is paid; and (7) award plaintiffs Reyes and Torres a total of $3,485.00 in attorney's fees and $400.00 in costs.

Any objections to the recommendations made in this Report must be submitted within fourteen days after filing of the Report and, in any event, no later than January 11, 2021.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. Proc. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See Small v. Sec'y of Health & Human Servs.*, 892

F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).  Plaintiff is hereby directed to serve copies of this Report and Recommendation upon defendants at their last known addresses, and to file proof of service with the Court.

_____/s/_____
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
December 28, 2020

U:\#JH 2020-2021\Torres, et al v. 894 DeKalb Pizza Corp., et al, 19-cv-5750\Torres, et al v. 894 DeKalb Pizza Corp., et al, 19-cv-5750 Default Judgment R&R FINAL.docx